AO 91 (Rev. 5/85) Criminal Complaint                                This form was electronically produced via OmniForm

# United States District Court

**WESTERN DISTRICT OF TEXAS**

FILED JUL 26 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

UNITED STATES OF AMERICA

V.

1) SHAWNA CARRILLO
2) PHILIP SMITH
3) CHRISTINA MARLIN
4) ROSCOE MARLIN

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: EP-07-M-3671

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 15, 2006 and continuing until February 13, 2007 in **El Paso** county, in the **Western** District of **Texas**, defendant(s) did, (Trace Statutory Language of Offense) knowingly and willfully combine, conspire, confederate and agree with each other and with others unknown to commit an offense against the United States, namely they conspired to knowingly possess and use, without lawful authority, a means of identification of another person with intent to commit, in connection with, any unlawful activity that constitutes a violation of a felony under any applicable State law, to wit: V.T.C.A. Section 71.02.

in violation of Title **18**, United States Code, Section(s) **1028(a)(7) and 1028(f)**.

I further state that I am a(n) **Special Agent** and that this complaint is based on the following facts:
Official Title

See attached affidavit of Special Agent Rafael Torres, United States Secret Service, attached hereto and incorporated herein by reference.

Continued on the attached Sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn before me and subscribed in my presence,

**7-26-07**                                           at  **El Paso, Texas**
Date                                                       City and State

_____, U.S. Magistrate Judge        _____
Name and Title of Judicial Officer                       Signature of Judicial Officer

**Hon. NORBERT J. GARNEY**
**United States Magistrate Judge**

## PROBABLE CAUSE AFFIDAVIT

1. I, Rafael Torres, herein referred to as "Affiant," have been employed as a Special Agent (SA) with the United States Secret Service (USSS) for approximately nine (9) years and seven (7) months. Prior to appointment with the the USSS, Affiant was employed as an insurance claims investigator for approximately two (2) years. Affiant has received extensive training in the detection and investigation of identity theft as well as counterfeit identification cards. Affiant has also participated in numerous investigations of said offense.

2. **On 02/13/07, El Paso Police Department (EPPD) Officers were dispatched to an Office Depot store located at 8701 Gateway West, El Paso, Texas., within the Western District of Texas, in reference to a forgery in progress.** When the officers arrived at the scene, the store employee advised them that an individual later identified as **ROSCOE MARLIN**, who was accompanied into the store by individuals later identified as **SHAWNA CARRILLO (CARRILLO)** and **PHILIP SMITH (SMITH)**, was attempting to obtain store credit, utilizing an identification card which appeared to be counterfeit.

   The Office Depot cashier advised the officers **MARLIN** had filled out a store credit application under the name N.L. and provided an identification which appeared to the cashier to be "fake". The cashier performed a standard credit check, which was approved. The cashier then contacted the telephone number listed on the credit application. The individual who answered identified himself as N.L. and confirmed he was in Arizona at the time and was not attempting to obtain credit. At this time, the cashier contacted the EPPD.

   Upon EPPD officers arrival at the scene, the officers requested identification from **ROSCOE MARLIN, CARRILLO** and **SMITH**. In response, **ROSCOE MARLIN** provided an Arizona driver's license under the name of N.L.; **CARRILLO** and **SMITH** provided Nevada driver's licenses bearing their names. Upon examining the licenses, the officers determined they appeared to be fraudulent. The officers detained the three suspects and transported them to EPPD Headquarters for proper identification. Once at EPPD Headquarters, officers obtained the suspects' actual identities and confirmed they each had active warrants for probation violation.

   The three suspects were charged and identified as follows:

   ROSCOE MARLIN– Failure to Identify, Forgery, Tampering with Government
   SHAWNA CARILLO – Failure to Identify, Tampering with Government Records
   PHILIP SMITH     - Failure to Identify, Tampering with Government Records

3. Continuing on 02/13/07, an EPPD Detective advised **ROSCOE MARLIN** of his *Miranda* rights which he waived and agreed to provide a statement without the presence of an attorney. **ROSCOE MARLIN** admitted to attempting to obtain

1

credit at the Office Depot earlier that day, using a counterfeit driver's license bearing the name N.L..

**ROSCOE MARLIN** further stated that a few months earlier, while in Phoenix, Arizona, he had become friends with an individual named N.L.. **ROSCOE MARLIN** claimed N.L. sold him his own identification, along with an "identity kit", containing an Arizona driver's license, phone number, address and social security number, for $1200.00.

N.L. was subsequently interviewed and claimed his identity had been stolen resulting in a total loss of $5,797.73 in fraudulent charges appearing on his credit report. N.L. also denied ever having met **MARLIN**.

4. An EPPD Detective advised **SMITH** of his *Miranda* warnings, which **SMITH** waived and agreed to provide a statement without the presence of an attorney. SMITH denied any involvement in the fraud at Office Depot.

5. An EPPD Detective advised **CARILLO** of her *Miranda* rights which she waived her right to an attorney but refused to provide details regarding the incident at Office Depot.

All three suspects were subsequently booked by EPPD, and transported to the El Paso County Jail.

On 02/15/07, a search warrant was executed at the Super Lodge hotel room, #303, the residence of **SMITH** and **CARRILLO**.

Upon entry, officers immediately observed several plastic containers containing marijuana, a marijuana pipe (bong), one (1) envelope with identifying information on the outside, plastic lamination material, blank card stock, gun ammunition and a blank card used to make identifications.

The following items were found, in addition to others not listed herein:.

1 Polaroid 75 ID card printing machine
1 gold and black file folder containing computer instruction manuals
1 black file folder containing various types of check making material
1 black and gold expanding file folder containing documents on multiple individuals
1 small black suitcase with various cables
Multiple documents containing identifying information on multiple individuals
PC to video component
1 Dell CD-RW module
1 black file case containing mortgage loan applications on approximately 300 persons
1 Play Station 2 box containing a laptop computer

2

      Valid Identification Documents on **CARRILLO** and **PHILIPS**
Several counterfeit driver's licenses under multiple names
Various counterfeit Identifications under multiple names
1 lamination machine
2 bottles of embossing powder
Miscellaneous papers and business cards
1 flash drive
Multiple blank cards
1 shredder containing miscellaneous shredded papers and Identifications
1 black velvet jewelry case containing a gold rosary
1 Datebook containing a Wells Fargo account #
Hosiery from Dillard's with sales receipt
Dillard's credit application containing victim identifying information
1 black binder containing miscellaneous papers with personal information
1 Southwest Airlines $100 gift certificate
1 Home Depot credit card
1 pawn ticket
1 counterfeit Nevada Driver's License bearing the name of J.B..
1 business card from Martin Tire
1 Helzburg Diamond bag containing 1 Seiko watch and associated paperwork
1 Macy's sales receipt
1 Macy's shopping pass for C.N., later identified as a victim

6.    The EPPD subsequently reviewed the Polaroid 75 printer, seized during the search warrant. The printer contained a ribbon. An examination of the printer revealed the ribbon had images of Arizona and Nevada driver's licenses. In addition, miscellaneous identifications bearing the images of **ROSCOE MARLIN, PHILIPS,** and **CARRILLO**. The images of **ROSCOE MARLIN,** contained the personal information of A.A. and N.L..

      A mortgage loan application and personal banking information of A.A. was found during the search warrant. An EPPD Detective contacted A.A . A.A. stated he had incurred $1,078.00 in fraudulent charges on his credit account and advised he would assist in the prosecution of the offenders.

7.    EPPD also located during the search warrant of a receipt for a purchase of $1,433.23 for wheels and tires from Martin Tires. An EPPD Detective subsequently interviewed the Store Manager, he identified **CARRILLO** as the individual who purchased a set of rims and tires by applying for credit under the name of J.B.. The store manager also identified **ROSCOE MARLIN** and **PHILIPS** as accompanying **CARRILLO**.

      J.B.'s personal information was listed on a mortgage loan application which was seized during execution of the search warrant. An EPPD Detective subsequently contacted J.B.. J.B. stated she had $3,891.42 in fraudulent charges reflected on her credit account.

3

8. On 02/23/07, the three suspects were charged with the State of Texas offense of Engaging in Organized Criminal Activity, in violation of V.T.C.A. § 71.02.

9. United States Secret Service subsequently conducted a computer forensics examination on the USB Drive seized during execution of the search warrant. The examination revealed that the USB Drive contained evidentiary images of W-2's and several Nevada driver's licenses.

10. On 02/23/07, an EPPD Detective contacted the North Las Vegas Police Department regarding information found during the search warrant on J.M.. According to police reports, on 10/06/06, a female entered a Dollar Tree store attempting to cash a personal check belonging to G.O., on a Wells Fargo Bank draft. The check was made out to J.M. and the female provided a Nevada driver's license bearing the name J.M.. The clerk at the store believed the driver's license was counterfeit and contacted the Police Department. Before the Police Officers arrived, the female fled the scene and left the driver's license at the store. North Las Vegas Police Department forwarded to the EPPD Detective a copy of the Nevada driver's license photo, which the EPPD Detective identified as a photo of **CARRILLO**.

11. On 03/15/07, the EPPD Detective contacted Cash America, located at 8181 Dyer, El Paso, Texas and interviewed the Store Manager, regarding a receipt found durring the search warrant under the name of J.M.. Spindler was advised the receipt corresponded to a pair of earrings which were to be held until 03/29/07.

12. On 03/19/07, the EPPD Detective met with the Store Manager of Helzberg's Diamonds, located at the Cielo Vista Mall, El Paso, TX., regarding a Helzberg's Diamonds gift bag and warranty found during the search warrant. The Store Manager confirmed the jewelry (one (1) diamond neckpiece, one (1) pair of diamond earrings, two (2) Movado watches), totaling $2530.00 was sold in her store on 10/28/06 to one individual accompanied by two (2) other persons. The jewelry was purchased by **CARRILLO** using a New York driver's license and a Sears credit card under the name of C.N. The Helzberg's Diamonds cashier identified **ROSCOE MARLIN, SMITH** and **CARRILLO** from a photo line up.

13. C.N.'s personal information appeared in a mortgage loan application seized during the search warrant. The affiant contacted C.N.. C.N. stated that her credit account revealed $2530.00 in fraudulent charges.

14. On 04/11/07, affiant advised **ROSCOE MARLIN** of his Miranda Rights, which he waived and agreed to provide a statement without the presence of an attorney. **ROSCOE MARLIN** admitted he, along with **CARRILLO, SMITH** and his wife, **CHRISTINA MARLIN** would frequently obtain credit at local stores using

4

counterfeit identification documents. The identification documents had each of their respective photos but contained the personal information of other persons. According to **ROSCOE MARLIN, CARRILLO** made the counterfeit identifications for both his wife and himself. **ROSCOE MARLIN** stated that **CARRILLO** obtained the personal information of other persons from mortgage loan applications she had in her possession. **MARLIN** also admitted that he used N.L.'s personal information at Office Depot on 02/13/07 to obtain credit. **ROSCOE MARLIN** provided a written statement.

15. On 04/12/07, affiant advised **CARRILLO** of her Miranda Rights, which she waived and agreed to provide a statement without the presence of an attorney. **CARRILLO** stated on or about December, 2006, she and **SMITH** met **ROSCOE MARLIN** and **CHRISTINA MARLIN** while living as neighbors at the Super Lodge Apartments in El Paso, Texas. **CARRILLO** admitted she and **SMITH** had been fraudulently obtaining credit using personal information, to include names and social security numbers of others since October, 2006. Eventually, **CARRILLO** offered **ROSCOE** and **CHRISTINA MARLIN** an opportunity to earn extra money by applying for credit at local stores in El Paso, Texas and making purchases, in exchange for payment. According to **CARRILLO, ROSCOE** and **CHRISTINA MARLIN** accepted her offer to participate.

    **CARRILLO** cited one instance where she made a counterfeit Las Vegas driver's license for suspect **CHRISTINA MARLIN** under the name of victim T.T. **CARRILLO** accompanied **CHRISTINA MARLIN** to a Johnson's Jeweler shop located in El Paso, Texas and witnessed **CHRISTINA MARLIN** purchase $10,000.00 worth of jewelry using credit she applied for in the store under the name of victim T.T. **CARRILLO** stated the Johnson's Jewelry manager took photos of **CARRILLO** and **MARLIN** in order to record them as "preferred customers".

    CARRILLO claimed they later pawned the jewelry at Cash and Carry Pawn Shop, located in El Paso, TX for under $300 and used the money to pay for **CHRISTINA MARLIN's** rent.

    **CARRILLO** further admitted that on 02/13/07, she accompanied **SMITH**, and **ROSCOE MARLIN** to attempt to apply for credit at an Office Depot under the name of victim N.L.

16. Affiant subsequently contacted victim T.T.. T.T. stated her credit reflected $28,368.81 in fraudulent charges. T.T's personal information appeared in a mortgage loan application found during the search warrant.

17. On 04/17/07, and EPPD Detective visited Johnson's Jewelers, 1320 N. Zaragosa, El Paso, TX., and spoke with the owner of Johnson's Jewlery regarding the "preferred customers" photos. The owner of Johnson's Jewlery confirmed there

5

was a list and photos of preferred customers. The owner of Johnson's Jewlery provided a photo of **CHRISTINA MARLIN** under the name of victim T.T..

18. On 04/23/07, the affiant advised **CHRISTINA MARLIN** of her Miranda Rights, which she waived and agreed to provide a statement without the presence of an attorney. **MARLIN** stated that in December, 2006, she and her husband, **ROSCOE MARLIN** met **CARRILLO** and **SMITH,** while living as neighbors at the Super Lodge Apartments in El Paso, TX. **MARLIN** stated she and her husband were struggling financially and inquired from **CARRILLO** and **SMITH** how they "made it so well". **CARRILLO** showed **CHRISTINA MARLIN** how she could make an identification bearing **CRISTINA MARLIN's** photo with another person's personal information, which could be used to apply for store credit at various department stores in El Paso, Texas. **CHRISTINA MARLIN** admitted she agreed to work with **CARRILLO** and **SMITH**. Subsequently, **CARRILLO** made Arizona identifications which she used to fraudulently obtain credit and make purchases. According to suspect **CHRISTINA MARLIN**, the merchandise they fraudulently purchased were sold on the street for half the retail price, or pawned at a fraction of the actual value. She stated they would normally purchase high value items, such as T.V.'s, washers, dryers, video game consoles and gift cards. **CHRISTINA MARLIN** stated that **CARRILLO** made a Nevada driver's license bearing the name of T.T. but had her photograph. **CHRISTINA MARLIN** stated she memorized all of T.T.'s information, applied for credit and purchased merchandise at several stores, including K-Mart, Kohl's, Johnson's Jewelers, Office Depot and Target. **CHRISTINA MARLIN** also stated that she purchased $10,000.00 in jewelry at Johnson's Jewelers using T.T.'s credit and sold the jewelry at a pawn shop for $250.00

    **CHRISTINA MARLIN** also gave written consent to search her residence. During the search, United States Secret Service Agents found the following evidence:

    1 counterfeit Wells Fargo Bank check in the name of victim T.T.;
    1 Daytimer notebook containing victim names and personal information;
    1 "First Cash Pawn" receipt for $250.00.

19. On 04/25/07, the affiant advised SMITH of his Miranda Rights, which he waived and agreed to provide a statement without the presence of an attorney. **SMITH** stated that he would drive **CARRILLO** and **ROSCOE MARLIN** to several stores (Home Depot, Mervyns, K-Mart, Sears) in order to make fraudulent purchases. He admitted to applying for credit at K-Mart and Macy's and purchasing merchandise, which he then sold on the street for half price.

20. On 05/11/07, the affiant contacted the following companies, [Citibank (Office Shack, Gordon's Jewelers, Sears), GE Money, Martin's Tires, Helzberg's Diamonds, Johnson's Jewelers, Kohl's], and confirmed the four suspects obtained credit fraudulently and purchased a total of $53,147.68 in merchandise

6

using the following victims' personal information:

| | |
|---|---|
| T.T. | - $28,368.81 |
| J.B. | - $3,891.42 |
| D.B. | - $5,001.36 |
| N.L. | - $5,797.73 |
| J.M. | - $2,598.64 |
| C.N. | - $2,530.00 |
| M.S. | - $3,881.72 |
| A.A. | - $1,078.00 |

21. As of 7/13/07, 37 victims, identified thru mortgage loan applications found during the search warrant on 2/15/07 have been contacted, and all loss confirmed.

    An additional 210 potential victims whose names were discovered during the search warrant, have not been contacted due to limited personal information.

22. Based on the aforementioned facts, Affiant believes probable cause exists that Roscoe Marlin, Christina Marlin, Shawna Carrillo and Phillip Smith violated 18 United States Code 1028(a)(7) and 1028(f).

*SA Rafael Torres, U.S.S.S*

7